IN RE GUARDIANSHIP OF FRANCES, RAMONA, AND GENEVIEVE GALLOWAY.

No. 42205.

December 12, 1933.

Mayne & Mayne, for appellants.

H. M. Logan, for appellee.

ALBERT, C. J.—Ephriam Galloway was the owner of the quarter section of land involved in this controversy. On his death the land passed by will to James E. Galloway, his son. This will was admitted to probate on the 14th of April, 1903. The son seems to have been a ne'er-do-well, and in 1926 he was adjudged a spendthrift and placed under guardianship. One Paul M. Flammant was appointed his guardian. At that time there was a first mortgage on this land for $11,000, a second for $1,200, a third for $600, a note due the Farmers State Bank of Silver City (of which bank Flammant was cashier and manager) for $600, and certain other debts. The total indebtedness was in the neighborhood of $15,600.

James Galloway had three minor children, named Ramona, Genevieve, and Frances. The latter, on November 10, 1930, was married to R. A. Hayes. Thus she attained her majority, and filed objections to the report of the guardian. The wife of James Galloway died in the year 1920, and in 1924 these three minors inherited from their maternal grandmother a share in her estate amounting to something like $7,000. At that time, upon due application, Flammant was appointed guardian for such minors, and the funds from the maternal grandmother's estate came into his hands as such guardian.

To take care of the indebtedness in the James Galloway guardianship, Flammant made application in that guardianship to mortgage the land in controversy, and submitted to the court a proposition for borrowing from the Federal Land Bank $10,000, and also for borrowing from himself, as guardian of the minors, the sum of $5,600, on a second mortgage. On submitting this application to the court in the James Galloway guardianship, the court made the following order:

"It is found best for the interest of James Galloway that said mortgages be approved, and necessary for his property. It is ordered that the $10,000 loan to Federal Land Bank be a first lien, approved and the $5,600 to Paul M. Flammant, Guardian of Galloway minors a second lien for said sum on real estate described, and bond of guardian is fixed at $31,200.00 for both loans in full. Clerk is ordered to certify approval of both mortgages when presented after bond filed and approved."

No proceedings whatever were had nor entries made in the guardianship of these minors. The actual amount received by the guardian of the minors from the maternal grandmother's estate was in the neighborhood of $7,000, which, after deducting expenses and the $5,600 loaned on this second mortgage, left total cash on hand on February 26, 1930, of $1,096.86, as reported by the guardian. He also reported disbursement of cash advanced to Frances Galloway of $100, and credited himself with $500 for services, leaving the amount on hand $496.86; and it is against this report and the prior conduct of the guardian that these objections are lodged.

As appears from what has already been said, these two guardianships were separate and distinct entities, and no proceedings whatever were had in the guardianship of the minors in relation to either of these loans. This second mortgage loan was made in January, 1927, and must be viewed in the light of the statutes existing at that time, being the Code of 1924.

Section 12581 reads as follows:

"Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs, under proper orders of the court or a judge thereof."

Section 12772 is as follows:

"Where investments of funds are to be made, including those to be made by executors, administrators, trustees, and guardians, and no mode of investment is pointed out by statute, they may under order of court be made:  *  *  *  2. In bond or mortgage upon real property of the clear unincumbered value of twice the investment.  *  *  * "

It is apparent that neither of these sections of the statute was complied with. There was no order whatever made in the minors'

guardianship authorizing the loaning of this money; and, in the second place, the money was loaned in the face of the statute, because when this loan was made the $10,000 loan to the Federal Land Bank was a first mortgage, and therefore the second mortgage could not be on real property of the clear and unincumbered value of twice the investment.

We have had this question before us on numerous occasions, as will be found in the following cases: Bates v. Dunham, 58 Iowa 308, 12 N. W. 309; Easton v. Somerville, 111 Iowa 164, 82 N. W. 475, 82 Am. St. Rep. 502; Garner v. Hendry, 95 Iowa 44, 63 N. W. 359; Guardianship of Benson, 213 Iowa 492, 239 N. W. 79; Baitinger v. Elmore, 208 Iowa 1342, 227 N. W. 344; Andrew v. Bank, 207 Iowa 394, 223 N. W. 249; In re Guardianship of Pharmer, 211 Iowa 1285, 235 N. W. 478. It is apparent from a reading of these cases and the statutes quoted that this conduct of the guardian in making this loan on the second mortgage cannot be approved. The loan being invalid and illegal, the wards have a right to accept or reject it, and in case of rejection the guardian is liable to the wards with interest. This is our pronouncement in the case of In re Guardianship of Pharmer, 211 Iowa 1285, 235 N. W. 478, and Guardianship of Benson, 213 Iowa 492, 239 N. W. 79. See, generally, 28 C. J., p. 1140. As throwing additional light on this subject see Foteaux v. Lepage, 6 Iowa 123; In re Anderson's Guardianship, 208 Iowa 191, 225 N. W. 258.

It is our conclusion that the district court erred in allowing the guardian of the minors to credit himself with the amount loaned on this second mortgage.

One other question is raised in the case, as to the amount of the fee to be allowed the guardian for his services herein. He made a charge in the final report of $500 which the district court saw fit to reduce to $200. We have reviewed the record on this, and think the district court was right in making the reduction and we approve its action in so doing. Aside from this reduction of the guardian's fees which we have reviewed as to the balance of the case, the same is reversed.—Affirmed in part; reversed in part.

EVANS, KINDIG, CLAUSSEN, and DONEGAN, JJ., concur.