L. A. ANDREW, State Superintendent of Banking, Appellant, v. EDDYVILLE SAVINGS BANK et al., Appellees.

BANKS AND BANKING: Liquidation—Trust Relation—Presumption. The presumption that a trustee has preserved the subject-matter of the trust cannot exist, in the absence of an allegation that said subject-matter came into the hands of the representative of the trustee, and *some* proof to sustain the allegation. (See Book of Anno., Vol. II, Sec. 9239).

Headnote 1:  7 C. J. pp. 744 (Anno.), 752; 34 Cyc. p. 346.

*Appeal from Wapello District Court.*—D. M. ANDERSON, Judge.

OCTOBER 18, 1927.

Petition of intervention, predicated on the theory of a trust, in the receivership of an insolvent bank. The trial court granted the preference, and established the claim in full, without interest, and entered a decree accordingly. The receiver appeals.—*Reversed.*

*John Fletcher*, Attorney-general, and *Jones, White & Bekman*, for appellant.

*Smith & Work*, for appellee.

DE GRAFF, J.—On the 5th day of March, 1925, L. A. Andrew, superintendent of banking of the state of Iowa, was appointed receiver of the Eddyville Savings bank of Eddyville, Iowa, and thereafter duly qualified. On the 13th day of August, 1925, J. A. Sackett, appellee herein, filed his petition of intervention, in which is recited that, on and prior to January 28, 1924, he had on deposit in the Eddyville Savings Bank the sum of $1,208.16, and that, shortly prior thereto, H. H. Harrold, the president and active manager of said bank, promised and agreed, at the instance and request of the claimant, to purchase for him United States Liberty Bonds of the par value of $1,200, and that, on the 28th day of January, 1924, the said president represented to the claimant that the said bonds had

been purchased for the consideration of $1,208.16, and that the claimant then made and delivered to the Eddyville Bank a certain check in said amount, drawn against his funds on deposit in said bank.

It is further alleged that the president of the bank then proposed to the claimant that the Liberty Bonds should be kept in a safety deposit box which the Eddyville Savings Bank kept in a bank at Des Moines, to which proposition the claimant consented. It is then alleged that the president of said bank did not purchase any Liberty Bonds, and that all the statements and representations made by the president of said bank were false, and made for the purpose of deceiving this claimant. It is further recited that the president of said bank, subsequently to the delivery of the check to the president, represented to the claimant that the bonds were in a safety deposit box in a bank in Des Moines; that the interest on said bonds was due, and thereupon a credit was entered on his savings bank book, of date July 1, 1924, in the sum of $24.98. It is further recited that the claimant had no knowledge of the fact that the Liberty Bonds had not been purchased and were not kept in a safety deposit box at Des Moines, until after the Eddyville Savings Bank had been closed.

The intervener prayed that his claim in the sum of $1,208.16 "be given preference over all depositors and creditors of the said Eddyville Savings Bank," and that same be set aside as a trust fund, and that the same be paid in full out of the assets belonging to said bank, with interest at 6 per cent "less the sum of $24.98 credited to him by said bank on July 1, 1924." No other or different allegations are contained in the petition of intervention, except as stated herein.

The receiver filed answer to the petition, and therein denied every allegation contained in the petition, except as expressly admitted in the answer. He admits that, on January 28, 1924, the intervener had on deposit in savings account in the Eddyville Savings Bank a sum in excess of $1,208.16, and that on January 28, 1924, the said intervener executed a certain check drawn against said funds on deposit for the sum of $1,208.16, and delivered the same to the said Eddyville bank, but asserts that said check was never charged against the said account of said intervener on the books of said bank; that, at the time the

said Eddyville bank was closed, there appeared on the books of said bank a savings account of the said intervener's, upon which there was then a credit to said account in the sum of $1,208.16, and that there also appeared on the books of said bank a checking account of the said intervener's, in the sum of $8.08; that this receiver has allowed to said intervener a claim as a general depositor in the sum of $1,223.48, with interest. The receiver denies that any trust fund was created by the facts pleaded in the petition of intervention, but avers that the relation of debtor and creditor has at all times existed between said intervener and said bank, down to the time of the closing of said bank. He further states that, even though a trust fund was created by reason of the facts alleged in the petition, said fund never came into his hands as such receiver of the Eddyville bank, and denies that the said intervener is entitled to any preference in the payment of his claim.

The proof shows that the check was never charged against the account of the intervener, and that his savings account at the time the receiver was appointed, showed a credit of $1,208.16.

The controlling legal principle of the case at bar has been frequently stated and applied by this court. In *Danbury St. Bank v. Leach*, 201 Iowa 321, it is said:

"In order to impress a trust upon an alleged fund, and to assert a preferential claim therefor in the hands of a receiver, two requisites are essential: (1) That the transaction out of which the claim arose, must have involved a trust relation, whereby the wrongdoer stood in the relation of trustee to the injured party. (2) That the fund claimed should be traceable into the hands of the receiver to the augmentation of the estate."

In commenting on this legal principle, it is said, in *City of New Hampton v. Leach*, 201 Iowa 316, which opinion must be read in the light of the pleaded facts:

"We have recognized in our decisions that these propositions are distinct, but must be concurrently proved."

It is said in *Bradley v. Chesebrough*, 111 Iowa 126:

"That plaintiff was a trust creditor does not, of itself, entitle him to preference over general creditors. To obtain that right, he must show, by presumption of law or otherwise, that

his fund has been preserved in the hands of the assignee, as an increase of the assets of the estate, from which it may be taken without impairment of the rights of general creditors.''

To the same effect is the statement of the rule in *Stilson v. First St. Bank*, 152 Iowa 724:

''The mere fact that claimant's money should be deemed as received as a trust fund is not sufficient to entitle the claimant to the preference which he asks as against the receiver and against other creditors.''

See, also, *Leach v. Sanborn St. Bank*, 203 Iowa 401; *Hudspeth v. Union Tr. & Sav. Bank*, 197 Iowa 913; *First St. Bank v. Oelke*, 149 Iowa 662.

It may be observed that the pleader in the case at bar, although he recites facts in his petition upon which he predicates a ''trust,'' and offers proof to sustain such allegations, makes no allegation to the effect that the alleged fund ''came into the hands of the receiver either as a distinct and traceable account or fund, or as an augmentation of the estate as a whole,'' and the proof in this particular is absolutely silent. There is no tracing of the alleged trust fund. It is not shown that the receiver ever received a dollar of assets from the bank. No presumption arises unless some facts are shown upon which to base the presumption in the claimant's favor. Merely showing the creation of a trust is not enough. This doctrine is fully established in the cases cited supra. The absence of pleading and proof of the traceability of the fund to the receiver is fatal to the claimant's case, even though we concede, *arguendo,* that a trust was properly pleaded, and established by the proof.

It is argued by the appellant that, the relation of debtor and creditor having been established in the first instance, the appellee, upon whom the burden rested, has failed to show that such a relationship ever terminated; and in support of this contention, he relies on *Bayor v. American Tr. & Sav. Bank*, 157 Ill. 62 (41 N. E. 622), and *Howland v. People*, 229 Ill. App. 23.

We deem it unnecessary to determine the proposition whether the probative facts do or do not establish a segregation of the fund in the bank whereby a trust relation may or may not be affirmed, since the principle first announced herein is decisive. Without any allegation whatever in the petition of

the intervener, or any proof offered by him, that the alleged trust fund came into the hands of the receiver, plaintiff's claim must fail. The claimant is entitled to recover as a general depositor.

Wherefore, the decree entered by the trial court is—*Reversed.*

EVANS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.