L. A. ANDREW, State Superintendent of Banking, Appellee, v. FARMERS SAVINGS BANK OF GOLDFIELD, Appellee; MAGNUS HANSON, Guardian, Appellant.

JANUARY 23, 1929.

*Nagle & Hill,* for appellant.

*J. W. McGrath* and *McGrath, Archerd & McGrath,* for appellee.

KINDIG, J.—It appears from the record that M. F. Coons was president, and W. M. Coons cashier, of the Farmers Savings Bank of Goldfield. M. F. Coons was at one time the administra-  tor of the estate of George C. Nelson, who died survived by a minor daughter, Margery Nelson. W. M. Coons, the cashier, was appointed guardian of Margery's property. At the time the George C. Nelson estate was closed, the administrator turned over to the guardian, on September 22, 1924, the sum of $6,665.30. That money was deposited by the guardian in the Farmers Savings Bank, as a loan, without order of court authorizing or approving the same. The original certificate of deposit was paid, and a redeposit of the proceeds thereof again made, without judicial sanction. So, when the bank ceased operations because of insolvency, March 11, 1926, the account of the minor's guardian therein consisted of a certificate of deposit for $5,500 and a checking account of $655.22. When the bank closed its doors, appellee, who was then state superintendent of banking, was duly appointed receiver. Afterwards, Magnus Hanson, the present guardian, was substituted for W. M. Coons,

the original guardian. Claim for a preference on behalf of the minor was made by the new trust officer, who is now the appellant.

Basis for that preference on the theory of a trust is asserted by appellant to be found in the illegal deposit by the former guardian. Such relief was denied by the trial court, but the demand was allowed as a general deposit. Ground for reversal is now predicated upon the thought that a trust grew out of the transaction before explained, and the minor's property should be redelivered to her present guardian accordingly.

I. Section 12581 of the 1924 Code provides:

"Guardians of the property of minors must prosecute and defend for their wards, may employ counsel therefor, lease lands, loan money, and in all other respects manage their affairs, under proper orders of the court or a judge thereof."

In the case at bar, the initial guardian of Margery Nelson loaned his ward's money and managed her affairs without either being first authorized so to do or subsequently receiving approval of such previous act by an order of any court or a judge thereof. Did the absence of such judicial sanction vitiate the loan and deposit agreements? An answer to that question can be found in the adjudicated cases.

No loans made, or other management of the minor's estate, have validity, generally speaking, without "the proper order of the court or a judge thereof." *McCutchen v. Roush,* 139 Iowa 351; *McIntire v. Bailey,* 133 Iowa 418; *Easton v. Somerville,* 111 Iowa 164; *Andrew v. Sac County State Bank,* 205 Iowa 1248. Specific application of that doctrine has been made to a guardian's attempt to make an unauthorized loan. *Bates v. Dunham,* 58 Iowa 308; *Slusher v. Hammond,* 94 Iowa 512. *Bates v. Dunham,* supra, says:

"We are of the opinion that Section 2250 of the Code [of 1873, now 12581, under 1924] modifies the common-law rule as to the power of a guardian over the property of his wards. The powers which the guardians of property possess are conferred in Section 2250. They must manage the interests of their wards under the direction of the court. They may thus—that is, under the direction of the court—lease their lands, loan their money during their minority, and do all other acts which the court

may deem for the benefit of the wards. This implies an inhibition upon the doing of these acts without the direction of the court. * * * But when an act is to be done under the direction of the court, as provided in Section 2250 of the Code of 1873, the direction precedes the act, and without such direction there is no authority to do the act. * * *"

Likewise, *Slusher v. Hammond,* supra, declares:

"This section [2250 of 1873 Code] was under consideration in the case of *Bates v. Dunham,* 58 Iowa 308, and was held to so far modify the common-law rule as to inhibit the investment of money and the doing of other acts by the guardian for the ward without the direction of the court, and to require that the direction be given before the act. * * * It is true, the facts in that case are in some respects unlike those in this, but the general rule announced in that case, that the direction of the court must precede the act of the guardian in making investments and doing other acts for his ward, is applicable in this."

*Andrew v. Sac County State Bank,* supra, is in harmony with the above and foregoing discussion. There, the action of the guardian did not amount to a loan or management of the ward's affairs, but rather, the transaction involved only a temporary deposit for safe-keeping, pending the presentation of the guardian's final report to the court for approval. Before us, however, in the case at bar, is a very different situation. Here, the course pursued by the guardian amounted to more than a mere precaution on his part to put the minor's funds in a place of safety. Rather than that, the original guardian negotiated for and attempted to effect a deposit in the nature of a loan, extending over a definite time, at a prescribed rate of interest. Hence, in this case, the guardian's endeavors in the premises were of no avail, because there was absent the supporting order of the court or judge, as required by said legislation. (There may be instances where such deposit could receive the subsequent approval of the court and thereby become valid. We do not have that question here, and consequently do not decide it.)

II. Deposits in banks come within the purview of that well established principle. If, then, the placing of money in the financial institution was not properly authorized, the result is a nullity, so far as the attempted contractual relation is con-

cerned. Consequently a trust arises, and the funds involved are to be held by the bank as a trustee, for the benefit of the ward. *Garner v. Hendry*, 95 Iowa 44; *In re Assignment of Knapp & Co.*, 101 Iowa 488. See, also, *City of New Hampton v. Leach*, 201 Iowa 316; *Leach v. Grinnell Sav. Bank*, 205 Iowa 1345; *Leach v. Battle Creek Sav. Bank*, 205 Iowa 971. Upon this subject, *Garner v. Hendry*, supra, consistently states:

"The law of this state inhibits the investment of money and the doing of other acts by the guardian in behalf of the ward without the direction of the court, and that direction must be given before the act. * * * In the proceeding to have the claim established as against the funds in the hands of the assignee of the bank, it was found and adjudged that the transactions between the defendant and the bank were of such a nature that the subject of the transaction retained its trust character. That could not have been the case, had the money in question been loaned to the bank by authority of the court. We conclude that the evidence was sufficient to justify the court in finding that the money was invested in a manner not authorized by it; that the defendant should be held responsible for the investment; and that he is liable in this action for its full amount."

To the same effect is the following language in *In re Assignment of Knapp & Co.*, supra:

"The fact of the wrongful deposit, in which the bank participated, takes the case out of the usual rule as to deposits, whereby the title to the money deposited is changed from the depositor to the bank, and the bank takes the property in trust. Because the trustee, or other officers in charge of the trust fund, has no authority to deposit it, its character, when deposited, is preserved in the interest of the *cestui que trust*; and as the trustee could not, by the act of depositing, prejudice the rights of the *cestui que trust*, he cannot, by his subsequent acts in taking a dividend, prejudice such rights."

III. Therefore, appellant's remedy in this proceeding is predicated upon the fact that the closed bank holds the ward's property in trust. Ownership thereof, under those circumstances, remains in the minor, and the relationship of debtor and creditor between the bank and the minor did not arise through the former

guardian's actions. *Andrew v. State Bank of New Hampton,* 205 Iowa 1064; *Leach v. Iowa State Sav. Bank,* 204 Iowa 497; *Leach v. Farmers Sav. Bank of Hamburg,* 204 Iowa 1083; *City of New Hampton v. Leach,* 201 Iowa 316.

As the redress is here sought upon that ground, appellant's right to recover is not completed by the mere establishment of the trust alone. He must go further before the receiver of the defunct institution can be compelled to turn over to him any part of the trust property. Identification of the ward's money is necessary, and the burden is upon appellant to trace the same as a trust fund into the custody of the receiver. *Andrew v. State Bank of New Hampton,* supra; *Leach v. Farmers Sav. Bank of Hamburg,* supra; *City of New Hampton v. Leach,* supra. Direct evidence upon this phase of the controversy is not found in the record. Apparently, attempt was not made by appellant to furnish it.

However, at this juncture, there is available to him a presumption. Explanation of this is furnished in *Andrew v. State Bank of New Hampton,* supra, through the following phraseology:

"When cash remains in the failing concern at the time it discontinued banking operations, and such money was afterwards delivered to the receiver, * * * the presumption is that said commingled fund contains 'the trust proceeds,' and the latter can be removed from the whole without injury or injustice to the general creditors, because there was 'augmentation.' Charity assumes that the trustee did no wrong, but spent and disposed of his own property, and retained that which belonged to others. * * *"

Among the assets of the Farmers Savings Bank of Goldfield which came from its own vaults into the hands of the receiver was $3,503.98 in cash. Aided by the presumption aforesaid, appellant has sufficiently traced that part of his ward's money into the hands of the receiver, and, as there identified, it is to be redelivered to the equitable owner thereof, subject to certain deductions hereinafter to be made.

IV. Appellee insists that this general rule should not prevail in the present litigation, because, when the administrator attempted to transfer the ward's funds to the original guardian,

the amount thereof was $6,665.30. Delivery of this was sought to be made by the use of a check drawn by the administrator upon the Farmers Savings Bank, which, at the time, had on hand for payment to depositors the sum of $2,555.37 only. Resultantly, appellee contends that such sum was the only money belonging to the ward which was ever received by the bank, and that, in all events, the ultimate recovery by the appellant must be limited to said item.

Certain stipulations were entered into by the parties, and these agreements changed the record from what it might otherwise have been. Quotation is now made therefrom:

"It is stipulated that, on September 22, 1924, the said guardian, William M. Coons, deposited in the Farmers Savings Bank of Goldfield, Iowa, the sum of $6,665.30, being the amount received by him from M. F. Coons, administrator of the George C. Nelson estate, and being the share of said minor in said estate.

"It is stipulated that, on September 25, 1924, that the said guardian, William Coons, drew from said account and placed in time certificate of deposit the sum of $6,000, and the sum of $400 in the second certificate. * * *

"It is further stipulated that, on February 22, 1926, that the said guardian, William M. Coons, presented the $6,000 certificate of deposit to the bank for payment, on which there was an accumulation of $300 interest, and the same was paid by the Farmers Savings Bank of Goldfield, Iowa, on said date.

"And it is stipulated that, on said date, from the proceeds of said deposit or the proceeds from the certificate of deposit, amounting to $6,300, the said William Coons, guardian, procured the issuance of a time certificate of deposit for the sum of $5,500, which C. D. was issued by the Farmers Savings Bank of Goldfield, Iowa, and delivered to William Coons, guardian."

Wherefore, whatever legal principles might have been applicable to the original transfer from the administrator to the guardian, it appears by the stipulation that thereafter the certificate of deposit then issued by the bank was paid, and a reinvestment of the proceeds thereof made, as evidenced by the present certificate held by the appellant. The case must be determined, therefore, without any regard to the manner

adopted by the administrator to deliver the ward's funds to the guardian, and no consideration can now be given to the fact that the bank at that time did not have sufficient cash in its vaults to cover the administrator's check. Whatever was the fact in reference to that, the certificate of deposit thereupon executed was afterwards paid in full, as suggested by the stipulation, and a new deposit made, which forms the basis for the present controversy. And, according to the stipulation, the new deposit consisted of the proceeds obtained from the bank when the old certificate was paid.

V. Insistence is made by appellant that he should not be confined in his recovery to the cash remaining in the bank and passing into the hands of the receiver after the institution closed.  Assuming, he says, that the burden is upon him to trace his ward's property into the hands of the receiver, nevertheless, the presumption hereinabove discussed, aiding him in that regard, applies to the bills receivable and moneys in other banks, as well as to the cash in the vaults of the Farmers Savings Bank. Reliance is made at this point upon *Andrew v. State Bank of New Hampton*, supra, and *Leach v. Iowa State Sav. Bank*, supra. A review of those cases discloses that they do not sustain appellant's contention. *Leach v. Iowa State Sav. Bank*, supra, holds to the contrary, for it is therein stated:

"It is not presumed that the money was converted by the bank into bills receivable, or into a deposit account with another bank, or into any other form of property."

Consistently, the very nature of the presumption claimed is such as to rebut a theory of that kind. By investing the money belonging to appellant's ward in bills receivable, under the circumstances, a conversion would result. So it would be if the ward's money had been taken from the vaults of the Farmers Savings Bank and utilized for some ulterior purpose in other banking institutions. Thereby, wrongful use would be made of the ward's property, and conversion would result. If applicable at all, the presumption refutes, rather than aids, this. Said inference is based upon the idea that the bank would not thus wrongfully appropriate the ward's money, but, on the other hand, would preserve and maintain it in accordance with

the trust character thereof. In *Andrew v. State Bank of New Hampton,* supra, we expressly refrained from deciding the point, by the use of the following precautionary statement: ·

"We do not here decide whether or not the 'presumption' will aid appellees in 'tracing' their funds from the cash of the bank wherein they were deposited over into the transformed 'assets,' such as bills receivable, deposits in other institutions, or any other kind or form of property; * * *"

Moreover, it has been determined by this court that the presumption sought by appellant does not apply to the facts presented by the case, for the reason that the presumption is to the effect that the beneficiary's property will be retained intact at all times. It is assumed that the form thereof will not be changed. *Leach v. Iowa State Sav. Bank,* supra; *Leach v. Farmers Tr. & Sav. Bank of Dedham,* 204 Iowa 1343. Again we repeat the language of *Leach v. Iowa State Sav. Bank,* supra:

"It is not presumed that the money was converted by the bank into bills receivable, or into a deposit account with another bank, or into any other form of property."

. . The same thought is later suggested in *Leach. v. Farmers Tr. & Sav. Bank of Dedham,* supra, in this way:

"Under the record in this case, the three claims should be impressed as a trust, not upon the assets of the bank as a whole, but only upon the cash which the bank at the time of its closing had in its possession, and which came into the hands of the receiver * * *."

Those pronouncements are distinguishable from what was said in *Andrew v. Security Sav. Bank,* 203 Iowa 546, and *Murray v. North Liberty Sav. Bank,* 196 Iowa 729, where bills receivable were the subject-matter of the trust; because, if the trust is express, and definitely authorizes the conversion of cash into bills receivable, no doubt the presumption would be available. Nevertheless, we do not have that situation here, and the presumption must be restricted to the cash in the vaults of the Farmers Savings Bank when it closed.

Appellant has not met the burden of proof, so far as the bills receivable and cash in other banks are concerned.

VI. During the previous discussion, it was suggested that, when fixing the amount of appellant's recovery here, there is to be a certain deduction from the $3,503.98 cash which went from the Farmers Savings Bank into the hands of the receiver. Reference is there made to an item of $791, which was previously allowed by the district court to one Matson, as a preferred claim, entitled to prior payment from the same fund. Complying with that judicial order, the receiver made payment thereof before the institution of this action. Thus, there remains impressed with appellant's trust the sum of $2,712.98, and this is the amount he is entitled to recover, subject, however, to the right of the establishment of other similar trusts, if any, in and to the same fund. See *Leach v. Iowa State Sav. Bank*, supra; *Andrew v. State Bank of New Hampton*, supra; *Leach v. Farmers Tr. & Sav. Bank of Dedham*, supra.

When this case was commenced, the receiver had not made his final report, nor had he paid any dividends. No prejudice, therefore, can arise in permitting appellant's claim at this time. *Andrew v. Security Sav. Bank*, supra.

Accordingly, appellant's claim is herein established as above indicated, and to that extent the judgment and decree of the district court is modified; otherwise it is affirmed.—*Affirmed*.

ALBERT, C. J., and EVANS, STEVENS, and FAVILLE, JJ., concur.